IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHARON A. DANDY,
On behalf of herself and
all others similarly situated,

      Plaintiff,                                           No. 08-CV-1027 JCH-GBW

v.

WILMINGTON FINANCE, INC.,

      Defendant.

ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S THIRD MOTION TO COMPEL

THIS MATTER came before the Court on the Plaintiff's Third Motion to Compel, filed on December 10, 2009. *Doc. 117.* Plaintiff moves to compel production of materials described in Requests for Production Nos. 26 and 27. Briefing on the matter was completed on January 21, 2010. *Doc. 142.* On February 3, 2010, a hearing on the matter was held. *Doc. 159.* At the hearing, the Court requested that the parties investigate certain factual issues raised. A second hearing was held on February 24, 2010. *Doc. 168.* The Court concludes that no further evidentiary hearings or oral argument is necessary. After reviewing the pleadings, including the supplemental briefing, and hearing arguments of counsel, the Court rules as follows:

1

Request for Production #27

In this discovery request, Plaintiff seeks for each relevant loan "(1) the loan note, and all attachments and riders to the loan note; (2) the HUD-1 Settlement Statement; and (3) the closing instructions and any amendments to the closing instructions." *Doc. 118*, Ex. A.  These documents are, of course, a subset of documents that would be found in a WFI loan file.  WFI objected to the production of these documents on the basis of relevance and undue burden.  *Doc. 136.*

As discussed in earlier Orders, "[t]he potential relevance of the disputed requests arise from one of three sources: (1) information which supports or undermines Plaintiff's argument that WFI was the nominal lender; (2) information which supports or undermines Plaintiff's argument that, even if AIG FSB was the nominal lender on the subject loans, WFI was the *de facto* lender; and (3) information which supports or undermines Defendant's possible argument that it was acting as the exclusive agent of AIG FSB." *Doc. 66* at 3-4; *see also Doc. 120* at 5.  Plaintiff contends, and Defendant has not disputed, that the name used to identify the lender in documents related to the relevant loans is inconsistent.  Most significantly, Plaintiff contends that, on some relevant loan documents, the lender is listed as "Wilmington Finance, A Division of AIG Federal Savings Bank" and on others the lender is listed as "Wilmington Finance"or "WFI."  To the extent that WFI (or its agents) identified itself on the loan documents as the lender, it is relevant to Plaintiff's argument that it was the nominal, or

2

at least *de facto,* lender.  Therefore, discovery of the relevant loan documents is "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. Pro. 26(b)(2).

WFI next argues that production of this list of documents would be unduly burdensome.  WFI points to the following: (1) the files are stored in off-site warehouses, which means substantial retrieval costs; (2) searching through the loan files to pull the specific documents requested by Plaintiff will require substantial man-hours; (3) the documents then must be reviewed by counsel for privilege and confidentiality issues; and (4) the cost of redacting private information from the documents will also be substantial.  *Doc. 136* at 8-10.  These burdens, however, do not justify a wholesale refusal to produce relevant documents.  None of the burdens are unique to the discovery in this case.  Companies often store files off-site, but that cost-based decision cannot be the basis for later refusing legitimate discovery requests.  Pulling specific documents from files is the nature of discovery.  Similarly, a company's decision to pay for counsel to review documents for privilege and confidentiality, while appropriate, also cannot be used to block legitimate discovery requests.

The only fact that significantly distinguishes this discovery request is the sheer volume of the loan files involved.  The parties have identified 169 "relevant" loans.  The Court finds that retrieving, sorting, reviewing, redacting and producing the requested documents from all 169 loans would be unduly burdensome without cost-sharing given

the proffered relevance. At a hearing on this Motion, Defendant proffered that the cost could approach $84,000.[1] Based upon discussions with counsel for both sides, the Court finds that compelling disclosure of the requested documents in 30% of the loan files would properly balance the burden of production with the Plaintiff's right to relevant discovery.[2] *Doc. 159, 168.* The specific files that will comprise the 30% will be selected by the Plaintiff from the loan number list that has been disclosed by the Defendant. This method will provide Plaintiff with an adequately large and substantially random selection of loan documents to review while reducing the burden of production. Therefore, WFI is hereby ordered to produce the specifically-requested documents in 30% of the loan files as selected by Plaintiff.

## Request for Production #26

In this discovery request, Plaintiff seeks "spreadsheets listing the entities or parties to whom AIG FSB initially sold its New Mexico loans." *Doc. 118* at 2 (citing *Doc. 45* at 7). The spreadsheets made their first appearance in the discovery battle in Defendant's Response to Plaintiff's First Motion to Compel. *Doc. 45.* In that pleading, WFI claimed that it had:

---

[1] This cost also includes the production of additional documents as described below.

[2] Plaintiff was given the opportunity to express a preference between receiving the requested documents from 100% of the loan files with some splitting of the costs with WFI and receiving the requested documents from 30% of the loan files without cost-sharing. Plaintiff indicated that she preferred the latter. *Doc. 168.*

4

> produced two spreadsheets listing the entities or parties to whom AIG FSB initially sold its New Mexico loans. See Ex. 2 (documents produced at Bates Nos. WIL-00335-345). Since the time that WFI made its initial disclosures, Plaintiff has had as much information responsive to this interrogatory as WFI. WFI has no obligation to track down the final purchaser of such loans when Plaintiff can do so as easily as WFI. See 7 James Wm. Moore, Moore's Federal Practice § 33.173[3][b] (2009) ("Of course, when the burden of conducting the research is substantially the same for either party, the responding party may be able to avail itself of the option to produce business records in lieu of answering."). Rather, Plaintiff can do exactly what she asks of WFI: "contact[] the entities to whom [AIG FSB] sold the loans to inquire whether the loans have been prepaid and a prepayment penalty imposed." (Motion at 11.) Moreover, even that inquiry may be unavailing, since the initial purchaser may have also sold the loan. WFI cannot be compelled to track these loans through the stream of commerce to determine the ultimate owner and whether prepayment penalties were assessed and collected.

*Id.* at 7. However, at the hearing on that motion, counsel for WFI corrected that assertion and conceded that the described spreadsheets had not been disclosed. *Doc. 55.*

In their complete form, the spreadsheets contain, for each relevant loan: the loan number, borrowers' names, addresses, loan amount, program type, the date the loan was sold, the identity of the investor and the existence of a prepayment penalty. *Doc. 136* at 3. WFI objects to disclosing the complete spreadsheets because of the personal data about the borrowers. They instead have disclosed a spreadsheet with "[a]ny private borrower-identifying and confidential financial information that was listed on the [original] spreadsheet, including the borrowers' names, addresses, loan amount, program type and other personal data, ... omitted." *Id.*

5

WFI's argument against disclosing the borrowers' information can be succinctly put as follows: (1) Plaintiff is not entitled to precertification class member discovery, and (2) given the lack of entitlement, the privacy interests of the borrowers should trump the discovery demands. *Id.* This Court agrees. While the Court earlier rejected WFI's argument that Plaintiff should be ordered not to initiate any communication with potential class members, that Order should not be read as dismissing the privacy interests of individuals. The analysis involved in refusing to place a prior restraint on the communication of a lawyer is far different from the analysis of whether to affirmatively order the disclosure of private financial information. As noted at the hearing on this Motion, the Court believes that, even though the Gramm-Leach-Bliley Act would not prevent the Court from ordering the disclosure of the borrower's information, that Act is indicative of a broader federal interest in keeping private information private.

At the hearing, Plaintiff argued that inclusion of the borrower names and contact information in the spreadsheets would enable her to contact those borrowers to obtain relevant loan documents that may bear on the issue of what entity was the *de facto* lender.[3] *Doc. 159.* Plaintiff explained that she had limited the documents requested in

---

[3] Plaintiff also contends that, if she is provided the borrower names, she would be able to interview those individuals about relevant statements made during the loan process. However, the Court concludes that the likelihood of obtaining useful information from interviewing borrowers about a loan process that occurred between four and seven years ago is too low to independently justify disclosure of private

6

Request for Production #27 because she had anticipated obtaining other relevant documentation directly from the borrowers. *Id.* As explained above, how entities involved in the relevant loans were identified on the loan paperwork is relevant to this case. As currently presented, the Court is choosing between (1) ordering the disclosure of the borrower names which would enable Plaintiff to contact borrowers in search of relevant documents but would obviously compromise the privacy interests of those borrowers, and (2) protecting the borrowers' privacy but preventing Plaintiff's access to relevant discovery. There exists a third way, however. The documentation Plaintiff intended to obtain from the borrowers is, of course, also contained in the loan files WFI will be reviewing to respond to Request for Production #27 discussed above. Consequently, the Court can protect the privacy interests of the borrowers and, at the same time, permit appropriate discovery by the Plaintiff by ordering that WFI include this documentation in its disclosure pursuant to Request for Production #27.

Therefore, the Court will not compel the disclosure of the personal information contained in the spreadsheets. In this context, "personal information" is borrowers' names, addresses or other information that can readily be used to identify the borrower.[4] However, the Court will compel discovery of additional documents from

---

information.

[4] Notably, WFI's list of "personal data" includes "loan amount" and "program type." Unless such information could readily be used to identify the borrower, it is not considered "personal information" in the context of this Order. Therefore, the

the same 30% of loan files selected by Plaintiff as described above.  *See supra* at 4.  Specifically, in addition to the three categories of documents specifically listed in Request for Production #27, the Court hereby compels the production of the following from the selected loan files: (a) forms drafted by WFI, AIG FSB, or Wilmington Finance, a division of AIG Federal Savings Bank; or (b) forms which, while not drafted by those entities, include material information written or typed into the form by those entities or their agents.

## Redaction

The documents disclosed pursuant to Request for Production #27 as well as the additional documents from the loan files to be disclosed as a result of the ruling on Request for Production #26 are to be disclosed subject to redaction of "personal information."  As above, "personal information" means borrowers' names, addresses or other information that can readily be used to identify the borrower.

---

disclosure of those two pieces of information are hereby ordered to be disclosed in the spreadsheets.

IT IS HEREBY ORDERED that Plaintiff's Third Motion to Compel is granted in part and denied in part as described above. Documents whose production has been compelled in this Order shall be served on the Plaintiff within 45 days of the date of this Order absent a showing of good cause.

_____
Gregory B. Wormuth
United States Magistrate Judge