IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHARON A. DANDY,
on behalf of herself and all others
similarly situated,
                              Plaintiff,

vs.                                                    Civ. No. 08-1027 JCH/GBW

WILMINGTON FINANCE, INC.,

                              Defendant.


MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's *Motion to Remand to State Court*, filed

December 30, 2009 [Doc. 125].  The Court having carefully considered the motion, briefs,

attachments, and relevant law, and being otherwise fully informed, finds that Plaintiff's motion

should be GRANTED.

BACKGROUND

Plaintiff filed her lawsuit in New Mexico's Second Judicial District on September 26,

2008.  *See* Complaint, attached as Ex. 1 to Doc. 1.  Defendant Wilmington Financial, Inc.

("WFI") timely filed a Notice of Removal on October 31, 2008.  *See* Doc. 1.  Plaintiff's

allegations are as follow: on November 3, 2005, she entered into an adjustable rate mortgage with

WFI that included a prepayment penalty.  Some of Plaintiff's loan documents list the lender as

"Wilmington Finance, a Division of AIG Federal Savings Bank," while other loan documents

simply list "Wilmington Finance" as the lender.  In her Complaint, Plaintiff alleges that

"Wilmington Finance is not a division of AIG Federal Savings Bank,...is not a federal thrift or

national bank," and "is not an operating subsidiary of a federal thrift or national bank."

Complaint, attached as Ex. 1 to Doc. 1, at ¶¶ 7-9.  On June 29, 2007, Plaintiff prepaid the subject mortgage loan and paid the current holder of the mortgage loan a prepayment penalty of $8,154.04.  Plaintiff contends that WFI's inclusion of a prepayment penalty as a term of her loan violated New Mexico law.  *See* NMSA 1978 § 56-8-30 (prohibiting prepayment penalties on mortgages).  She also contends that the inclusion of a prepayment penalty clause as a term of her loan violated the New Mexico Unfair Practices Act ("UPA"), NMSA 1978 §§ 57-12-1 *et seq.*

 Plaintiff brings her suit on behalf of herself and two separate classes: the "injunctive class" and the "damages class."  The injunctive class consists of New Mexico homeowners who obtained adjustable rate mortgage loans on or after July 1, 2003 that included a prepayment penalty and "where 'Wilmington Finance' is listed on the loan documents as the lender (including loans where the lender is listed as 'Wilmington Finance, a division of AIG Federal Savings Bank' or any other name that includes 'Wilmington Finance.'" Complaint at ¶ 16.  The damages class consists of persons meeting the same requirements as the injunctive class, with the additional requirements that the persons have refinanced or paid off their loan and that "the entity that serviced the loan at the time of refinance or payoff charged a prepayment penalty within four years of the filing of this complaint up through the date of class certification."  *Id.* at ¶ 17.  In her Complaint, Plaintiff alleges that the injunctive class is made up of approximately 302 members and the damages class is comprised of approximately 102 members.  *See id.* at ¶ 18.

 On behalf of herself, Plaintiff seeks actual damages in the amount of the prepayment penalty of $8,154.04.  She seeks to have this amount of actual damages trebled pursuant to the UPA.  *See id.* at ¶ 19, Request for Relief ¶ G.  Plaintiff seeks actual damages to be awarded to members of the damages class (not trebled).  *See id.*, Request for Relief at ¶ H.  For the injunctive class, Plaintiff seeks injunctive relief prohibiting Defendant from extending adjustable rate

2

mortgage loans in New Mexico that include a prepayment penalty and prohibiting Defendant "from enforcing any such prepayment penalties for loans extended on or after July 1, 2003, or allowing others to enforce such prepayment penalties."  *Id*. at ¶ 41, Request for Relief at ¶ F.

Defendant makes two arguments in support of removal jurisdiction.  First, it argues that removal is justified under the Class Action Fairness Act because the parties are sufficiently diverse and, according to Defendant's calculations, the relief Plaintiff seeks exceeds $5 million in value.  Second, Defendant argues that removal is proper because the Court has federal question jurisdiction because Plaintiff's claims arise under federal law.  Defendant bases its federal question argument on the contention that AIG Federal Savings Bank, not Defendant, entered into the loan agreements described in the Complaint, and that federal law provides the only basis for claims against a federal savings bank or its servicing agent for illegal prepayment penalties.  *See* Notice of Removal [Doc. 1] at 6-8.  Both of Defendant's arguments fail, and this case must be remanded to state court for lack of jurisdiction.

## LEGAL STANDARDS

Defendant has raised two separate bases for removal and, as discussed below, it bears the burden in both cases of demonstrating that federal jurisdiction exists.

A.  Class Action Fairness Act

The first basis on which Defendant claims this Court has jurisdiction is the Class Action Fairness Act ("CAFA"), codified in pertinent part at 28 U.S.C. §§ 1332(d) and 1453.  CAFA gives federal district courts original jurisdiction over purported class actions in which (1) the aggregate amount in controversy exceeds $5 million exclusive of interest and costs; (2) any member of a class of plaintiffs is a citizen of a State different from any defendant; and (3) the proposed class consists of 100 or more persons.  28 U.S.C. §§ 1332(d)(2) and (5)(B).  A "class

action" for CAFA purposes includes any civil action filed under Fed. R. Civ. P. 23 or a "similar state statute or rule of judicial procedure," 28 U.S.C. § 1332(d)(1)(b), such as Rule 1-023 NMRA, under which Plaintiff filed this action.  Plaintiff does not contest that the requisite diversity of citizenship exists, but contends that Defendant has not established that CAFA's amount in controversy requirement is met.

Congress enacted CAFA "to respond to perceived abusive practices by plaintiffs and their attorneys in litigating major class actions with interstate features in state courts."  *Coffey v. Freeport McMoran*, 581 F.3d 1240, 1243 (10th Cir. 2009).  CAFA's language and structure clearly indicate that Congress intended to create broad federal jurisdiction over class actions that satisfy CAFA's jurisdictional requirements, with exceptions to be construed narrowly.  *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163-64 (11th Cir. 2006); *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 342 (4th Cir. 2008) ("CAFA unquestionably expanded federal jurisdiction and liberalized removal authority").  Despite Congress's intention to expand federal jurisdiction, however, most courts, including all of the circuits that have considered the issue, have held that a defendant seeking to remove a case under CAFA still has the burden of establishing that the jurisdictional requirements are met, just as under traditional diversity jurisdiction.  *See, e.g., Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57-58 (2d Cir. 2006); *Morgan v. Gay*, 471 F.3d 468, 472-73 (3d Cir. 2006); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685-86 (9th Cir. 2006); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1329-30 (11th Cir. 2006); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005).[1]  In the absence of binding precedent to the contrary, this Court agrees that a removing defendant bears the burden to demonstrate that the

---

[1] The Tenth Circuit has not directly addressed whether CAFA changes the party on whom the burden falls to establish the jurisdictional requirements.

jurisdictional requirements have been met, even when the case is removed under CAFA.

The parties dispute which standard Defendant must meet in establishing that the requisite amount in controversy is met.  Plaintiff contends that Defendant must establish "by a reasonable certainty" that the amount in controversy exceeds $5 million because her Complaint "contains an affirmative good faith allegation that the amount in controversy is less than $5,000,000." Plaintiff's Brief in Support of Motion to Remand (hereinafter "Pl. Br.") [Doc. 126] at 6 (citing *Lowdermilk v. U.S. Bank Nat'l Assn.*, 479 F.3d 994, 1000 (9th Cir. 2007)).  Defendant contends that the "reasonable certainty" test is inapplicable to this case because Plaintiff's Complaint only alleges that *actual damages* are less than $5 million and does not address the potential cost of injunctive relief.  *See* Defendant's Opposition to Plaintiff's Motion to Remand (hereinafter "Deft. Resp.") [Doc. 157] at 5-7.  Instead, Defendant argues that it must only prove that the requisite amount in controversy exists by a "preponderance of the evidence."  *See id.* at 7; *McPhail v. Deer & Co.*, 529 F.3d 947, 953 (10th Cir. 2008) (citing *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001)).[2]  Because the Court finds that Defendant has failed to meet its burden even under the lower "preponderance of the evidence" standard, it need not reach the question of whether the higher "reasonable certainty" test is applicable in this case.

A defendant must "establish jurisdiction by proving jurisdictional *facts* that made it *possible* that [the amount in controversy] was in play..." and "[i]t is only the jurisdictional facts that must be proven by a preponderance–not the legal conclusion that the statutory threshold

---

[2] Although *McPhail* and *Franklin* both involved cases in which the removing defendant had to demonstrate that the amount in controversy exceeded $75,000 for traditional diversity jurisdiction purposes, in the absence of any holding to the contrary the Court will adopt the same standards as applying to demonstrating the amount in controversy in CAFA cases where the complaint does not allege a specific amount in damages.

amount is in controversy." *McPhail*, 529 F.3d. at 955 (emphasis in original).  If a defendant is able to establish the jurisdictional facts by a preponderance of the evidence, "uncertainty about whether the plaintiff can prove his substantive claim, and whether damages...will exceed the threshold, does not justify dismissal.  Only if it is 'legally certain' that the recovery...will be less than the jurisdictional floor may the case be dismissed." *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).  The *McPhail* court held that, in order to demonstrate the facts necessary to support its assertion that the case may meet the amount in controversy, a defendant may rely on two methods.  First, a defendant may make "an estimate of the potential damages from the allegations in the complaint" so that a "complaint that presents a combination of facts and theories of recovery that may support a claim in excess of [the amount in controversy] can support removal.  *McPhail*, 529 F.3d at 955.  A court may make the determination by "'[r]eading the face of the complaint,' even though the complaint did 'not specify the numerical value of the damage claim.'" *Id.* at 956 (quoting *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).  In addition, the defendant may provide other documentation, such as affidavits, that can assist it in proving the jurisdictional facts to demonstrate the amount in controversy.  *Id.*

B.  <u>Federal Question Jurisdiction</u>

The second basis on which Defendant claims that this Court has jurisdiction is pursuant to 28 U.S.C. § 1331, under which the Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A case "arises under" federal law if "its 'well-pleaded complaint establishes either that federal law creates the cause of action of that the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law.'" *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (citation omitted).  Even if a lawsuit alleges only state law claims, it may still confer

6

federal jurisdiction "when a federal statute wholly displaces the state-law cause of action through complete pre-emption," as Defendant alleges is the case in this matter. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003). If a federal statute completely preempts a state law cause of action, a claim that falls under the federal law's scope, even if pleaded in terms of state law, is in reality based on federal law and may be removed. *Id*. Additionally, this Court may exercise jurisdiction when a state law claim "turns on a substantial question of federal law." *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994). *See also Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-13 (2005) (reaffirming the "longstanding...variety of federal 'arising under' jurisdiction...[for] state-law claims that implicate significant federal issues").

However, simply raising federal preemption as an affirmative defense does not confer federal jurisdiction or authorize removal. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996) (Defendant's assertion of a defense based on federal law, such as federal preemption of the state law on which the plaintiff's claim is based, is not a proper basis for removal, "even if both parties agree that the only issue for decision in a case is the validity of a federal preemption defense") (citations omitted)). Similarly, where the statute a defendant claims provides the basis for removal jurisdiction based on federal preemption does not provide for a private right of action for the claims brought by the plaintiff, the "complete preemption" doctrine does not apply. *See Schmeling*, 97 F.3d at 1343.

The removing party, in this case, Defendant, bears the burden of demonstrating that jurisdictional prerequisites are met. *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001). Federal courts have a constitutional role as limited tribunals, and therefore must strictly construe removal statutes and resolve all doubts against removal. *See Pritchett v. Office*

7

*Depot, Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2005); *Laughlin v. K-Mart Corp.*, 50 F.3d 871,

873 (10th Cir. 1995).  Thus, Defendant must demonstrate that Plaintiff's claim either raises a

federal question on the face of the Complaint or that Plaintiff's right to relief necessarily depends

on the resolution of a substantial question of federal law.

## ANALYSIS

A. Amount in Controversy

For purposes of determining whether CAFA's $5 million jurisdictional threshold is met,

the value of the various forms of relief sought on the face of the Complaint on behalf of the

named plaintiff and all putative class members, including actual damages, treble damages for the

named plaintiff, injunctive relief, and attorneys' fees, must be aggregated.  *See Woodmen of the

World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1217-18 (10th Cir. 2003).  For the most part,

the parties agree that the value of Plaintiff's claims for actual and treble damages for herself and

actual damages on behalf of the damages class, as well as attorneys' fees, approximates $1.1

million.  *See* Pl. Br. [Doc. 126] at 8; Deft. Resp. [Doc. 157] at 10.  It is with regard to the value of

injunctive relief that the parties' estimates diverge wildly, with Plaintiff calculating the value at

$1.4 million and Defendant's calculation ranging as high as $24.4 million.

The actual damages that Plaintiff seeks for herself and on behalf of the damages class are

relatively straightforward to calculate.  Plaintiff's personal damage claim arises from the

allegedly illegal prepayment penalty that she paid in the amount of $8,154.04.  Plaintiff seeks to

have this amount trebled under the UPA, for a total amount of $24,462.12.  Plaintiff does not seek

treble damages on behalf of the damages class members, so claims on behalf of the damages class

are limited to actual damages.  Plaintiff's Complaint estimates a damages class consisting of 102

persons.  She estimates damages to each of these members of the damages class as being equal to

her damages of $8,154.04.  Defendant has presented no evidence to challenge Plaintiff's use of

her actual damages figure to calculate estimated damages for the damages class.  Multiplying the

claims of the 102 members of the damages class by an estimated average amount of $8,154.04 in

damages results in a total of $831,712.08.  Adding this amount to Plaintiff's personal damage

claim of $24,462.12 results in a total damages claim of $856,174.20.  Plaintiff also seeks

attorneys' fees, and a reasonable estimate of such fees may be included in the calculation of the

amount in controversy.  *See Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998).

Defendant contends that an appropriate measure of attorneys' fees is 25 to 30 percent of requested

damages.  *See* Notice of Removal at 3.  Although Plaintiff does not concede that an attorneys' fee

as high as 30 percent of the damages amount is an appropriate measure, the Court will adopt such

a figure as an upper-end estimate for purposes of calculating the amount in controversy.  Thirty

percent of $856,174.20 results in an estimated attorneys' fee of $256,852.26.  Adding this amount

to the damages amount results in a total estimated claim by Plaintiff and the damages class of

$1,113,026.46.  Thus, Defendant must demonstrate by a preponderance of the evidence that the

value of the relief sought on behalf of the injunctive class is greater than $3,886,973.54 in order

meet the jurisdictional threshold under CAFA.  It has failed to do so.

For purposes of establishing the amount in controversy when injunctive relief is sought,

the proponent of federal jurisdiction may try to establish either the value of what the injunction

would be worth to the plaintiff or what compliance with an injunction would cost the defendant.

*McPhail*, 529 F.3d at 954 (citing *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 540-41

(7th Cir. 2006)).  Plaintiff seeks an injunction that would prohibit Defendant from from extending

adjustable rate mortgage loans in New Mexico that include a prepayment penalty and that would

also prohibit Defendant "from enforcing any such prepayment penalties for loans extended on or

9

after July 1, 2003, or allowing others to enforce such prepayment penalties." Complaint at ¶ 41,

Request for Relief at ¶ F. Looking first at the value of the injunction to Plaintiff, Defendant's

Notice of Removal assumes an average value of prepayment penalty equal to that which Plaintiff

paid, $8,154.04. *See* Notice of Removal [Doc. 1] at 4. Plaintiff's complaint estimated that the

injunctive class was comprised of approximately 302 members. Defendant used that number to

calculate an estimated value to the injunctive class of $2,462,520.08 in terms of forgiven

prepayment penalties to the class members.[3] Adding this number to the estimate for actual

damages and attorneys' fees for Plaintiff and the damages class ($1,113,026.46) results in an

amount in controversy of only $3,575,546.54, an amount far short of CAFA's jurisdictional

threshold.[4]

    In order to support its claim that the amount in controversy exceeds CAFA's jurisdictional

threshold, Defendant employs a creative argument when estimating its cost of complying with an

injunction. Plaintiff seeks an injunction that both prevents Defendant from enforcing any

prepayment penalty and that enjoins Defendant from allowing others to enforce any prepayment

penalties on loans initially originated by Defendant.[5] According to a Declaration signed by

---

    [3] Although Defendant uses Plaintiff's estimate of 302 members of the injunctive class in making its calculation of the amount in controversy, it contends that only 172 loans would be subject to an injunction. *See* Notice of Removal at 4. If only 172 loans were subject to an injunction, this would reduce the estimated value of an injunction to only $1,402,494.88. Nonetheless, even though Defendant, as holder of the loan records, is in the superior position to determine the number of potential persons in the injunctive class, the Court will adopt the estimate of 302 members shown on the face of Plaintiff's Complaint.

    [4] Even if Plaintiff also sought attorneys' fees based on the value to the injunctive class, this would still add only $738,756.02 to the total (30 percent of the estimated value of $2,462,520.08), for a total amount in controversy of $4,314,302.56.

    [5] Plaintiff's request for injunctive relief also seeks to enjoin Defendant from extending any adjustable rate mortgage loans in the future that include a prepayment penalty. Defendant

Defendant's President and CEO, the 172 loans that would be subject to Plaintiff's requested injunction "were all sold to various portfolio lenders, large institutional investors and Wall Street firms in the national secondary market for mortgage loans."  Declaration of George Roach, attached as Ex. 2 to Notice of Removal [Doc. 1] at 5 ¶ 16.  Defendant contends that, because it no longer owns the subject loans, the only way that it could comply with a ruling that enjoins it from allowing others that now own the loans to enforce the prepayment penalties would be to repurchase all 172 loans.  Defendant calculates that repurchasing all of the loans from third parties at face value would cost approximately $24,389,309, and it is this amount that it contends is in controversy.

Fatally for Defendant's argument, however, is the fact that not only did Plaintiff never request that Defendant be required to repurchase the loans, but that the Court is without authority to order such a repurchase.  As stated by Defendant, all of the loans are currently owned by third parties.  The ability of Defendant to repurchase the loans would be dependant on the willingness of each of the third parties, who are not parties to this litigation or subject to the jurisdiction of this Court, to sell the loans back to Defendant.  Indeed, even Defendant acknowledges that purchasing the loans would not "be appropriate or even feasible."  Notice of Removal at 5.

As a practical matter, the relief sought in Plaintiff's injunction (prohibition of the collection of a prepayment penalty) could be achieved in a much simpler manner than through negotiating and completing 172 separate purchases, such as by requiring Defendant to reimburse third parties in return for their foregoing collection of a prepayment penalty, by requiring

---

contends that it does not currently make loans with prepayment penalties in New Mexico, and does not allege that this portion of the injunction would impose any costs on it.  *See* Deft. Resp. [Doc. 157] at 11.

Defendant to pay such penalties on behalf of the class members, or by requiring Defendant to reimburse members of the injunctive class when they pay a prepayment penalty. The Court is sympathetic to Defendant's claim that the injunction sought does not mention reimbursement, but rather only seeks to enjoin Defendant from allowing others to collect the prepayment penalty, and that Defendant does not have the ability to control what the loans' owners decide to do with respect to collecting the penalty. Nonetheless, Defendant's contention that the injunction sought by Plaintiff, taken literally, would be impossible to comply with because Defendant does not have the ability to prevent other owners from collecting the penalty goes only to the question of whether the relief sought by Plaintiff is actually available. If Defendant is correct that the only way to achieve compliance with the literal language of the injunction sought is through a transaction that the Court is without authority to order (forcing Defendant to buy back all of the loans from third parties), then the injunction Plaintiff seeks may simply not be viable as pled. However, Defendant cannot meet his burden to demonstrate a jurisdictional amount in controversy by calculating the cost of complying with an order that the Court is without authority to make.[6] The Court therefore concludes that the amount in controversy is less than the $5 million jurisdictional threshold, and CAFA does not provide a basis for removal.

     B. <u>Federal Question Jurisdiction</u>

---

[6] The Court also notes the weakness of Defendant's claim that the amount in controversy, even if Defendant could somehow be forced to repurchase the loans, would be the face value of the loans rather than simply the foregone prepayment penalties. The loans are secured by underlying assets, and Defendant has not presented evidence that the loans are distressed in any way, so the repurchased loans should be worth approximately what Defendant paid for them, minus the value of foregone prepayment penalties. Of course, tracking down the loans and completing the purchases would involve transaction costs for Defendant that would count toward a calculation of compliance costs, but Defendant's contention that the face value of the loans would constitute the amount in controversy would mean that the loans have no underlying value, which is clearly not the case.

Defendant claims that this Court has federal question jurisdiction on two bases–that Plaintiff's claims challenging the prepayment penalties under New Mexico law are completely preempted by federal law and that adjudication of Plaintiff's claims requires the resolution of substantial questions of federal law.  As an initial matter, the Court notes that Defendant's Notice of Removal appears to be based solely on the preemption argument, with the "resolution of substantial questions of federal law" argument, relying on *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-13 (2005), not being raised until Defendant's Opposition to Plaintiff's Motion to Remand.  A separate basis for removal not mentioned in the initial Notice of Removal may not later be used to justify removal.  *See* 28 U.S.C. § 1446 (a) (stating that the notice of removal must include a statement of the grounds for removal).  However, to the extent that the "resolution of substantial questions of federal law" argument may be merely an extension of the ground raised in the Notice of Removal, rather than a new ground, the Court will analyze that argument as well.

Defendant's argument that Plaintiff's state law claim is completely preempted by federal law relies on a mischaracterization of Plaintiff's claim.  Defendant correctly states that the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461 *et seq.* (1994) ("HOLA") and accompanying regulations by the Office of Thrift Supervision ("OTS") expressly authorize federally-chartered savings banks to make residential mortgage loans without regard to state restrictions on credit terms, including prepayment penalties.  *See* 12 U.S.C. §§ 1463(a), 1463(g), 1464(a); 12 C.F.R. §§ 560.2, 560.34.  The federal regulations explicitly preempt state laws that regulate, *inter alia*, prepayment penalties, when applied to the operations of "Federal savings associations."  *See* 12 C.F.R. §§ 560.1, 560.2.  Defendant also correctly states that the preemptive effects of HOLA and the regulations promulgated by OTS most likely extend to the operating agents of federal savings

banks.  *See, e.g., State Farm Bank, FSB v. Reardon*, 539 F.3d 336, 346-49 (6th Cir. 2008) (holding that federal preemption attaches to the activities of the exclusive agent of a federal savings bank undertaken on behalf of the bank because to hold otherwise would significantly interfere with the ability of a federal bank to engage in activities permitted and regulated by federal law).  Finally, Defendant argues that claims against a federal savings bank for charging illegal prepayment penalties are already provided for by federal laws, such as the Home Owners' Equity Protection Act of 1994, 15 U.S.C. § 1639, and the Depository Institutions Deregulation and Monetary Control Act of 1980, 12 U.S.C. § 1735f-7a, thereby displacing state law with respect to claims against such entities.  However, none of these contentions are directly relevant to Plaintiff's claims against Defendant.

Quite simply, Plaintiff is not suing AIG Federal Savings Bank or any other federal financial institution.  The sole Defendant is WFI.  Plaintiff's Complaint contends that WFI made the subject mortgage loan to Plaintiff, that WFI is not a division of AIG Federal Savings Bank, and that WFI is not a federal thrift or national bank.  *See* Complaint at ¶¶ 4, 7, and 8.  Thus, nothing on the face of the Complaint indicates that federal law is involved.  Rather, this is a suit grounded in state law against a non-federal entity.  Because the alleged federal nature of Plaintiff's claim is not clear on the face of the Complaint, Defendant is using preemption only as a defense, which is generally not grounds for removal.  *See Vaden v. Discover Bank*, 129 S.Ct. 1262, 1278 (2009) (reaffirming the "well-pleaded complaint rule" that enables the plaintiff to retain state court jurisdiction by pleading only state law claims and "the corollary rule that federal jurisdiction cannot be invoked on the basis of a defense or counterclaim"; *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987) ("even an obvious pre-emption defense does not, in most cases, create removal jurisdiction"); *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996) ("a

defendant's assertion of a defense based on federal law, such as the federal preemption of the state law on which a plaintiff's claim is based, [is not] a proper basis for removal.").

Defendant contends that Plaintiff sued the wrong party, and that the proper defendant should be AIG Federal Savings Bank, in which case preemption would apply. However, this contention merely raises a factual question and cannot create federal jurisdiction. Defendant succinctly states the crux of the issue in its Response brief, amply illustrating exactly why this case does not present a federal question, when it writes that "the preemption analysis turns not upon whether an entity is a named defendant, but rather upon whether the entity that made the loan is a federally-chartered bank." Deft. Resp. at 17. Plaintiff likely would not quibble with this framing of the issue, as it is very close to what she is arguing as well. Plaintiff does not contest that, if AIG Federal Savings Bank had been the actual lender, it could have legally charged a prepayment penalty. Instead, she claims that the actual lender was WFI. Similarly, WFI does not appear to contend that it, as a non-federal entity, possesses preemption rights or that it is not subject to state laws regarding prepayment penalties such that if it had actually made the loans at issue, it would properly be subject to Plaintiff's suit. Instead, it claims that it merely facilitated the loan on behalf of AIG Federal Savings Bank, who was the actual lender. Thus, the question raised by the Complaint is essentially a factual one–which entity actually made the loan–rather than a legal one that calls for the interpretation of federal statutes.

Defendant attempts to get around the general preclusion of removal jurisdiction that is based on a defense of preemption by arguing that, even when a suit alleges only state law claims, federal question jurisdiction still exists "when a federal statute wholly displaces the state-law causes of action through complete pre-emption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003). Complete preemption in the removal context arises in "the specific situation in which a

15

federal law not only preempts state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Schmeling*, 97 F.3d at 1342.  However, Defendant's reliance on *Beneficial* and *Schmeling* is misplaced.  Although Defendant contends that "because AIG FSB was [Plaintiff's] lender and there is no dispute that it is a federally-chartered savings bank organized and regulated under HOLA, [Plaintiff's] claims are wholly-displaced by the statute and this Court has federal question jurisdiction under the Supreme Court's rationale as articulated in *Beneficial*," Deft. Resp. at 17-18, this assumes the very fact in contention at the heart of Plaintiff's Complaint.  Unlike this case, *Beneficial* involved a state law claim for usury filed directly against a national bank.  *See* 539 U.S. at 3.  The *Beneficial* Court found that the plaintiff's state law claim was preempted because the National Bank Act, which sets substantive limits on the interest rates that national banks may charge and which provides a private right of action to borrowers asserting that a national bank charged usurious rates, provides the exclusive right of action, thereby obviating any state law claim for usury against a national bank.  *Id.* at 9-10.  Not only is the instant case not brought against a national bank, but no federal private right of action exists to enable a plaintiff to bring a claim for an allegedly illegal prepayment penalty against a non-federal entity.[7]  The presence of a federal cause of action is essential to a claim of complete preemption, and is missing in this case. *See id.*; *Schmeling*, 97 F.3d at 1343 ("removal based on preemption is permissible only if federal law provides a replacement cause of action").

Finally, Defendant argues that "[f]ederal question jurisdiction also exists because all of

---

[7] The two laws cited by Defendant that prohibit the ability of national banks to charge prepayment penalties in certain situations do not appear to create a private right of action for their violation and, at any rate, govern only the activities of national banks and therefore cannot foreclose an action against a non-federal entity.

[Plaintiff's] claims will necessitate the adjudication of substantial, disputed questions of federal law." Deft. Resp. at 20. However, the actual identity of the lender is a question that can be decided under state contract and commercial law, which the state courts are competent to adjudicate, and does not require interpretation of substantial questions of federal law. OTS regulations confirm that state contract and commercial laws are not preempted by HOLA to the extent that their application "only incidentally affect[s] the lending operation of Federal savings associations." 12 C.F.R. § 560.2(c)(1). Identifying the parties to a contract and characterizing their relationship is inherently a matter of state contract law and involves no federal question. A determination that WFI was the lender and therefore subject to state laws regarding prepayment penalties would not affect the lending operations of Federal savings associations, because the conduct at issue is that of WFI, not AIG Federal Savings Bank. Such a finding would not impede national banks from circumventing state laws, as long as they are the actual lenders.

Other federal courts in this Circuit, addressing the propriety of removal where the claim of federal preemption centers on determining the identity of the lender, have found that the determination should be made in state court and that remand is appropriate. *See Flowers v. EZPawn Okla. Inc.*, 307 F. Supp.2d 1191 (N.D. Okla. 2004); *Colo. ex rel. Salazar v. Ace Cash Express, Inc.*, 188 F. Supp. 2d. 1282 (D. Colo. 2002). The Court follows the same reasoning expressed in those opinions.

In *Flowers*, the plaintiff alleged exclusively state law claims against EZPawn and EZCorp, neither of which was a federal entity that could claim preemption based on their own identities. Similar to Defendant's claim in this case, the *Flowers* defendants argued that the loans at issue had actually been made by a federally regulated bank, and that the state law claims against them were completely preempted by federal law. The court disagreed, noting that the

17

issue before the court was not whether the plaintiff's claims would have been preempted had they been brought against the federally regulated bank, because the claims were only made against non-federal entities.  It found that "for purposes of remand, [the court] must look to plaintiff's allegations to determine whether the petition on its face compels a legal finding that [the federal bank] is the real lender."  307 F. Supp. 2d at 1205.  It distinguished the case before it from *Beneficial*, noting that, in *Beneficial*, the national bank was the named defendant, putting the issue of preemption squarely at issue on the face of the complaint.  *Id.*  Taking the plaintiff's allegations as true that EZCorp through EZPawn was the true lender, the court granted the plaintiff's motion to remand, finding that the state court was the proper forum for a determination of the lender's identity.  *Id.* at 1206.[8]

   *Ace Cash Express* presented a similar issue to *Flowers* (and to this case).  In that case, the plaintiff brought state law claims against a check-cashing business that also made loans to its customers.  The defendant argued that removal was proper because the loans at issue were actually made by a national bank, and that the defendant was merely acting as an agent for the national bank, so the state law claims should be preempted.  *See* 188 F. Supp. 2d at 1283-84.  The

---

   [8] Defendant attempts to distinguish *Flowers* by claiming that the court rejected the defendants' argument that a federally-regulated bank was the real lender on the loan only because the defendants failed to attach any evidence to the notice of removal or opposition to remand to support their assertion that a federally-regulated bank was the real lender.  *See* Deft. Resp. at 19.  A closer reading of the ruling shows that the court made its decision based on the allegations in the complaint, and that it indicated that only evidence compelling it to conclude as a matter of law that the federally-insured bank was the true lender would be sufficient to prevent remand.  While Defendant has presented some evidence to argue that it is not the true lender, Plaintiff has come forward with significant evidence to rebut Defendant's claim, including evidence of loan documents showing WFI as the lender, as well as evidence that WFI underwrote and made decisions on all loans, performed all origination services, agreed to hold solely in its own name any loan that could not be assigned on the secondary market, and funded all loans from an account that it alone owned and controlled.  *See* Pl. Resp. at 14-15.

court rejected this argument as flawed, finding the plaintiff's allegations in its complaint to be dispositive: "The complaint strictly is about a non-bank's violations of state law.  It alleges no claims against a national bank under the [National Bank Act]."  *Id*. at 1285.[9]  The court found that the National Bank Act does not provide federal question removal jurisdiction in actions against entities that are not banks and that the defendant's claimed relationship with the national bank did not elevate it to that status of a national bank, so that remand was proper.  *Id*.

Defendant contends that these and similar cases holding that preemption does not extend to loans made by agents of national banks, are no longer valid after *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1 (2007).  However, this overstates the *Watters* holding and misapplies it to the circumstances of this case.  *Watters* concerned an attempt by a Michigan state agency to regulate Wachovia Mortgage Company, a wholly-owned operating subsidiary of a national bank, Wachovia Bank, N.A.  The Court held that the state could not regulate Wachovia Mortgage Company, because the subsidiary was "a wholly owned, state-chartered entity, licensed as an operating subsidiary [of Wachovia Bank] by [the Office of the Comptroller of the Currency]." 550 U.S. at 7.  The Court predicated its holding on the fact that it has always "treated operating subsidiaries as equivalent to national banks with respect to powers exercised under federal law." *Id*. at 18.  It clearly limited its holding to the narrow class of affiliate subsidiaries that qualify

---

[9] Although *Ace Cash Express* addressed a claim of preemption under the National Bank Act ("NBA"), 12 U.S.C. §§ 1 *et seq.* rather than HOLA, the same reasoning applies to this case. The NBA is an analogue to HOLA; it simply applies to national banks rather than to federal thrifts.  The regulations promulgated under the NBA and HOLA give identical definitions for "operating subsidiaries" and provide that preemption under each Act is limited to the federally regulated entities themselves and their operating subsidiaries.  *See* 12 C.F.R. §§  5.34(e)(2) [NBA], 559.3(c)(1) [HOLA].  WFI has admitted that it was never an operating subsidiary of AIG Federal Savings Bank.  *See* WFI's response to Request for Admission No. 47, attached as Ex. A to Pl. Br. [Doc. 126].

under the relevant regulations as "operating subsidiaries," expressly distinguishing between general non-bank affiliates of national banks and "an operating subsidiary which is tightly tied to its parent," holding that only operating subsidiaries qualify for federal preemption. *Id.* at 19. Under HOLA's regulations, in order to qualify as an operating subsidiary, an entity must not only be tightly controlled by the parent federal thrift, but the parent entity must also own more than 50 percent of the voting shares of the subsidiary entity. *See* 12 C.F.R. § 559.3(c)(1). As previously discussed, WFI has admitted that it was not an "operating subsidiary" of AIG Federal Savings Bank. Accordingly, *Watters* is not applicable to this case, nor does it affect the prior rulings in cases such as *Flowers* and *Ace Cash Express* that did not involve operating subsidiaries of national banks. Plaintiff's Complaint explicitly alleges that Defendant was not a division of AIG Federal Savings Bank, that it was not an operating subsidiary of the bank, and that Defendant, rather than the bank, made the loans at issue. As such, no basis for a claim of preemption is clear on the face of the Complaint, and this Court therefore does not have federal question jurisdiction.

C.  Attorneys' Fees and Costs

An order by which a court remands a removed suit "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Whether such fees should be awarded "should turn on the reasonableness of removal," so that "where the removing party lacked an objectively reasonable basis for seeking removal" fees may be awarded. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Although the Court finds that removal is improper, it does not find that Defendant lacked an objectively reasonable basis for seeking removal. Thus, it will not award costs and expenses to Plaintiff.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Remand to State Court* [Doc.

125] is GRANTED.  It is FURTHER ORDERED that Plaintiff's request for costs and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 1447(c) is DENIED.


_____
**UNITED STATES DISTRICT JUDGE**